## Commonwealth *vs.* David Pare.

Essex. April 9, 1998. - May 8, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Child Abuse. Evidence,* Privileged communication, Communication between patient and psychotherapist, Communication with social worker, Relevancy and materiality. *Privileged Communication. Witness,* Credibility.

At the trial of an indictment in three counts for indecent assault and battery on a child under fourteen years of age, in which the defendant moved to be provided with certain records pertaining to the alleged victim, the record did not support the motion judge's determination that all the records relating to an evaluation of the alleged victim by a "sexual information and trauma team" were privileged under G. L. c. 233, § 20J [429-430], and, in the circumstances of the case, the records were both presumptively relevant and, upon an in camera examination, actually relevant; the judge erred in denying defense counsel access to the records, and the error created a substantial risk of a miscarriage of justice that required a new trial [430-431].

Indictment found and returned in the Superior Court Department on February 16, 1994.

A motion for access to privileged records was heard by *Richard E. Welch, III,* J., and the case was tried before *Barbara J. Rouse,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Carol A. Donovan,* Committee for Public Counsel Services, for the defendant.

*Elan H. Graydon,* Assistant District Attorney, for the Commonwealth.

Greaney, J. The defendant was convicted by a jury in the Superior Court of three charges of indecent assault and battery on John (a pseudonym), a child under fourteen years of age, G. L. c. 265, § 13B. The Appeals Court reversed the defendant's convictions and set aside the jury's verdicts because the defendant's trial counsel had been improperly denied access to arguably privileged counseling and treatment records of John,

and, in particular, certain records of John's evaluation by a "sexual information and trauma team" (team) at the Center for Family Development (center). *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 582 (1997). Before reaching this result, the Appeals Court examined the records in question, and concluded that they contained information that reasonably could have supported the defendant's contention that he had committed no crimes.[1] We granted the Commonwealth's application for further appellate review. We also have examined the disputed records. We agree with the result reached by the Appeals Court and substantially with the reasoning in its opinion. Accordingly, we reverse the defendant's convictions and set aside the jury's verdicts.

The background of the case is stated in the Appeals Court's opinion, *id.* at 567-570. For purposes of our decision, it is sufficient to point out only the following. (1) The accusations of sexual abuse against the defendant made by John (who was the son of the defendant's girl friend and ten years old when the first accusation was made) came over three years after the last alleged incident of abuse and John's last contact with the defendant. (2) The defendant denied the allegations, asserting that John had fabricated them because he believed that the defendant had introduced the mother to drugs (she had been incarcerated for selling drugs) or had made them as the result of improperly suggestive influences. John's credibility thus became the critical issue before the jury. (3) The defendant's trial counsel made a procedurally proper pretrial motion, supported by a lengthy affidavit, to examine records of John's treatment and counseling and of the sexual abuse evaluation of John made by the team at the center.[2] It was during the interviewing and counseling process in that evaluation that John first made the allegations of sexual abuse against the defendant. The defendant's pretrial motion to examine John's records was denied after the

---

[1]The undisclosed records properly were sealed and transmitted to the Appeals Court for that court's independent review. See *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 568 n.5 (1997), and cases cited.

[2]We reject the Commonwealth's argument that the defendant's pretrial motion for production of records failed adequately to raise his claim that improper interview techniques were used during an evaluation of John by a "sexual information and trauma team" (team) at the Center for Family Development (center). The defendant's motion sufficiently presents this concern by addressing the relevancy of various records to the circumstances of John's disclosure of abuse.

motion judge examined them in camera and determined that the bulk of the records, including all of the team's materials, were "irrelevant."[3] (4) The issues concerning access to, and admissibility at trial of, the disputed records are governed by the five-stage protocol, noted below, provided for by *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-183 (1993), not the revised protocol provided for by *Commonwealth* v. *Fuller*, 423 Mass. 216, 226 (1996), which was decided after the charges against the defendant had been tried.[4] We turn now to the issues on further appellate review.

1. As has been noted, Stage One of the *Bishop* protocol requires that a judge deciding a defense motion for access to records claimed to be privileged must make a privilege determination and "reduce his or her decision, and the reasons therefor, to writing, with specific reference to the privilege or privileges claimed and found." *Commonwealth* v. *Bishop*, *supra* at 181. The motion judge here made "Findings as to Privilege Determination Stage One" and stated, as to the entirety of the records, "that a privilege has been asserted pursuant to psychotherapist-patient privilege (G. L. c. 233, § 20B [*a*]); [and] the social worker-client privilege (G. L. c. 112, § 35)."

---

[3] The trial judge also denied the defendant's renewed motion to examine the records on the basis that the defendant had failed to raise "any facts or circumstances . . . not consider[ed]" by the motion judge. We agree with the Appeals Court that, in the absence of changed circumstances, the trial judge was not required to review the records again in camera. *Commonwealth* v. *Pare*, *supra* at 568 n.6.

[4] The protocol enunciated in *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-183 (1993), may be summarized as follows:

*Stage One — privilege determination.* When a criminal defendant seeks production of treatment or counseling records of an alleged victim, the alleged victim or the keeper of the target records may refuse to produce them claiming a statutory privilege or privileges against disclosure. A judge is required to hold a hearing and to determine in writing whether any privilege or privileges in fact apply.

*Stage Two — relevancy determination.* If the target records are found to be privileged, then trial counsel for the defendant is to make a written submission outlining the theory or theories under which the records are "likely to be relevant" to an issue in the case. If the judge decides that the defendant's proffer satisfies this standard, the judge is to examine the records in camera and separate relevant from irrelevant materials, sealing the latter for transmittal to an appellate court, if necessary.

*Stage Three — access to relevant material.* The judge next provides the prosecutor and defense counsel with access to the relevant materials, subject to appropriate protective orders, so they may determine whether disclosure of

We agree with the Appeals Court, see 43 Mass. App. Ct. at 570-572, that this purported "finding" did not comply with the first requirement of the *Bishop* case. The mere assertion of a privilege or privileges does not establish that any such privilege or privileges in fact exist and apply to protect the records sought to be examined. A judge considering a motion for examination of allegedly privileged records, therefore, must, as a threshold matter, specify in a written memorandum which privilege or privileges he or she finds actually apply to provide protection to the documents or category of documents in issue so that the defendant may proceed to Stage Two of the inquiry. We need not further concern ourselves here with the privilege determination requirement because the Commonwealth agrees that the records should be examined in camera by the appellate courts (as they were by the motion judge) to determine whether they contain relevant information which triggers consideration of Stages Three through Five of the *Bishop* protocol.[5]

2. The Appeals Court defined the standards of relevancy that apply to the *Bishop* protocol, see 43 Mass. App. Ct. at 572-574, and, after examining the disputed records, including the team-related materials compiled during John's evaluation at the center, discussed at length why and how the information

---

information in the records to the trier of fact is necessary to provide the defendant a fair trial.

*Stage Four — disclosure of relevant communications.* The judge rules (in a written memorandum) on the defendant's motion that disclosure of the records to the trier of fact is needed to provide the defendant a fair trial. Any materials excluded at this point are sealed for later transmittal to an appellate court, if necessary.

*Stage Five — trial.* The judge makes a final determination as to the admissibility of the records subject to any other statutes or rules of evidence that may apply.

*Commonwealth* v. *Fuller*, 423 Mass. 216 (1996), changed the Stage Two standard for privileged rape counseling records (G. L. c. 233, § 20J) from a "likely to be relevant" inquiry. A defendant seeking access to privileged rape counseling records (and privileged domestic violence counseling records, G. L. c. 233, § 20K, see *Commonwealth* v. *Tripolone*, 425 Mass. 487, 489 [1997]), must now show "a good faith, specific, and reasonable basis for believing that the records will contain exculpatory evidence which is relevant and material to the issue of the defendant's guilt." *Id.* at 226 & n.9. The other stages of the *Bishop* protocol were not changed in *Fuller*.

[5]By examining the records in camera, the motion judge at least implicitly found that the defendant's motion seeking access to the records satisfied that part of Stage Two of the *Bishop* protocol that requires an adequate proffer by the defendant of his theory or theories on the issue of relevancy. We agree with this determination.

in the withheld materials would be relevant to, and supportive of, the defendant's position. *Id.* at 575-582. In this latter regard, the Appeals Court considered the evidence at the trial and pointed out that, among other uses, the information in the records would (a) provide a basis for the defense to retain and present an expert to express opinions about the suggestive or coercive propensities of the techniques used in the team's interviews of John, *id.* at 578; (b) permit a challenge through cross-examination of the testimony of important Commonwealth witnesses who had suggested to the jury that the team's evaluation was neutral in approach and designed only to get at the truth, *id.* at 579; (c) furnish several other opportunities to question the fairness and reliability of the evaluation made by the team, *id.* at 580; and (d) disclose pertinent facts about John's ability accurately to perceive, remember, and recount and indicate his possible motives for falsely claiming that he had been abused, *id.* at 578. These matters went directly to the issue of John's credibility, the core issue to be resolved by the jury in light of the defendant's contentions that John's accusations were fabricated and probably induced by the team's improper use of improper techniques in its evaluative assessment.

Our independent examination of the disputed records confirms the Appeals Court's observations and conclusions. We reject the Commonwealth's argument that the information in the withheld records and in the team's evaluation was cumulative of other evidence at the trial. We therefore agree with the Appeals Court's determinations that "the documents reflecting John's allegations of sexual abuse and his related counseling and treatment were presumptively relevant . . . [and in fact] were actually relevant to [the] defense. [As a consequence,] it was reversible error to deny [defense] counsel [and the prosecutor] access thereto in accordance with the *Bishop* protocol; and . . . the Superior Court's denial of access created a reasonable, if not substantial, risk of an erroneous conviction." 43 Mass. App. Ct. at 582. The defendant is entitled to a new trial, at which (after the defense counsel and prosecutor have examined the records) the judge should proceed to take up and rule on the remaining steps in the *Bishop* protocol. *Id.* at 582 n.25.[6]

3. Before leaving this topic, we need to make one other point.

[6]The trial court should again review the records sought by the defendant and carefully segregate the relevant records from the irrelevant, consistent with both this and the Appeals Court's opinion.

In the course of its discussion of the "Relevancy Determination," the Appeals Court, *id.* at 574, said the following:

> "Initially, we note that the facts of this case do not implicate the principal public policy rationale which prompted the *Bishop* procedures, i.e., minimizing the potential reluctance of rape and sexual abuse victims to seek needed therapy. See *Bishop,* [*supra*] at 176; *Fuller,* [*supra*] at 221-222. In cases in which children of tender years, like John, are subjected to diagnostic evaluations at the behest of an adult without the necessity of their assent, the concern that disclosure of the records of that evaluation will create a 'chilling effect . . . preventing those in need from seeking . . . help,' *Commonwealth* v. *Collett,* 387 Mass. 424, 428 (1982), seems of much reduced significance" (footnote omitted).

The Commonwealth has suggested that this passage expresses the view of the Appeals Court that the protections provided for in *Bishop* and *Fuller* for cases of sexual abuse are not implicated in prosecutions involving juvenile victims. The passage, of course, expresses no such view. In fact, the entire Appeals Court opinion is devoted to an application of pertinent steps in the *Bishop* protocol to the circumstances of this case in almost the same manner as if John had been an adult. We think, however, that the remarks convey an ambiguous, and possibly misleading, message to counsellors and other personnel who treat victims of sexual abuse, attorneys, trial judges, and other parties who have concerns in this area. There is nothing in our case law which would justify a conclusion that privileged records of juvenile victims are entitled to less protection than those of adult victims. See *Commonwealth* v. *Jones,* 404 Mass. 339, 342 (1989) (confidentiality assured under social worker privilege to Department of Social Services employees who treat children alleging sexual abuse). The public policy rationale supporting protection of records in the case of adult victims applies with equal force to the records of juvenile victims. Indeed, just as an adult victim will expect confidentiality as any therapeutic process is pursued, the adult caretaker of a juvenile who claims that he or she has been sexually abused, in making the decision to seek a diagnostic evaluation or therapy for the juvenile, will fully expect an assurance (perhaps for the benefit of the juvenile, perhaps for the adult caretaker's benefit, or perhaps for the

benefit of both) that the evaluative or therapeutic process will remain confidential under any applicable privilege or privileges.

4. A Department of Social Services social worker testified, over objection and a motion to strike by defendant's trial counsel, that, sometime after the team's evaluation, John greatly improved and was "able to tell [her] disclosures, albeit hard disclosures but truthful disclosures." This testimony about "truthful" disclosures (and the testimony of any other Commonwealth witness that John was telling the truth) should be excluded at any retrial for the reasons fully explained by the Appeals Court. 43 Mass. App. Ct. at 581 n.24.

5. The judgments of conviction are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for a new trial.

*So ordered.*

## COMMONWEALTH *vs.* KIM ANDREWS.

Suffolk. February 3, 1998. - May 14, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Identification. Evidence,* Identification, Joint enterprise. *Practice, Criminal,* Motion to suppress, Required finding, Assistance of counsel, Argument by prosecutor, Instructions to jury, Reasonable doubt. *Homicide. Intent. Joint Enterprise. Constitutional Law,* Assistance of counsel.

At the hearing on a motion to suppress out-of-court and in-court identifications of a criminal defendant, the defendant failed to demonstrate that the police "coached" the witnesses concerning the description of the suspect so as to render the identification procedures impermissibly suggestive, and the judge correctly ruled that the identifications were admissible in evidence. [437-439]

At the trial of an indictment for murder in the first degree, the judge did not err in denying the defendant's three motions for a required finding of not guilty, where the evidence was more than sufficient to warrant a finding that the defendant committed the murder with deliberate premeditation or that the defendant acted as a joint venturer. [439-442]

A criminal defendant failed to demonstrate ineffective assistance of his trial counsel in failing to pursue a "second gunman" theory of defense or in failing to argue for a finding on a lesser included offense, where such tactics either would not have significantly influenced the verdict or were incompatible with the defendant's primary defense. [442-443]

At a murder trial, certain improper remarks in a prosecutor's closing argument did not create a substantial likelihood of a miscarriage of justice, in light of the entire argument, the evidence at trial,. and the jury instructions. [443-444]

In the circumstances of a criminal trial, error, if any, in the judge's use of the phrase "moral certainty" in his instructions concerning reasonable doubt did not create a substantial likelihood of a miscarriage of justice. [444-445]

There was no basis on the record of a murder trial for this court to grant any relief under G. L. c. 278, § 33E. [445]

INDICTMENTS found and returned in the Superior Court Department on February 14, 1995.

The cases were tried before *James D. McDaniel, Jr.,* J.

*Mary F. Costello* for the defendant.

*Katherine E. McMahon,* Assistant District Attorney *(James*

*W. Coffey,* Assistant District Attorney, with her) for the Commonwealth.